UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHANNON PARRISH,

                  Plaintiff,

        v.

                                                Case No. 13-11757
COMMISSIONER OF SOCIAL SECURITY,                Honorable Julian Abele Cook, Jr.

                  Defendant.



ORDER

The Plaintiff, Shannon Parrish, filed a complaint under 42 U.S.C. § 405(g) requesting review of a final decision by the Defendant, the Commissioner of Social Security Administration ("Commissioner), that she was not disabled under the Social Security Act (the "Act").

The Commissioner has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 contending that there are no genuine issues of material fact to be resolved in this action (ECF. No. 11). Parrish, on the other hand, has a filed a motion which seeks to reverse the decision of the Administrative Law Judge and remand this matter back for further proceedings. The two motions were referred to Magistrate Judge Charles E. Binder for an evaluation, and On August 5, 2014, he filed a report recommending that the Court (1) grant the Commissioner's motion for summary judgment, and (2) deny Parrish's request for remand. Parrish filed a timely objection to the magistrate judge's report on August 19, 2014.

I.

In June 2007, Parrish filed an application for child's insurance benefits, claiming to have

suffered from a condition that rendered her unable to work as of April 1, 2000. However, the relevant time period for the instant claim began on Parrish's eighteenth birthday (September 20, 2006) and concluded on her twenty-second birthday (September 20, 2010). After Parish's initial application for benefits was rejected, she sought and ultimately obtained a *de novo* hearing before an administrative law judge ("ALJ") who, in a decision rendered on April 14, 2012, determined that she was not a disabled person within the meaning of the Social Security Act.[1]

In her application for benefits, Parrish contends that she suffers from a variety of conditions, to wit: attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and social anxiety. (Tr. 70). Since at least December 2008, Parrish has sought psychiatric treatment from Dr. Susan D. Charlamb, M.D., who, according to Parrish, initially diagnosed her with mixed anxiety and depressed mood, along with ADHD."[2] (Plf's Brf. 2, ECF No. 9). In March of 2009, Dr. Charlamb referred Parrish to Dr. Steven Spector, Ph.D., to undergo psychological testing. (Tr. 163). According to Dr. Spector, Parrish has a long history of interpersonal difficulties, often misunderstands the nuances of social behavior, and has a significant learning disability. (Tr. 166). Ultimately, Dr. Spector diagnosed Parrish with Asperger's syndrome, "which is high functioning autism[,] as well as a nonverbal learning disability." *Id.*

On March 30, 2012, the ALJ conducted a hearing on Parrish's application for benefits. According to Parrish, she was previously employed as a cashier but had problems "[g]iving back change at the register." (Tr. 223). In addition, Parrish testified that she (1) easily fatigues and naps

---

[1] The ALJ issued a decision on April 20, 2007 that was vacated by the Appeals Council "because the record upon which the [ALJ] based the decision could not be located." (Tr. 25).

[2] The Court is unable to decipher Dr. Charlamb's notes concerning Parrish's initial diagnosis.

for approximately two hours each day, (2) has difficulty comprehending written material, and (3) has low self-esteem and frequently gets anxiety in social situations. (Tr. 223-25). Finally, Parrish maintains that she treats her condition by taking Adderall (a prescription amphetamine), and seeing her psychiatrist every three months. (Tr. 220).

Following the administrative hearing, the ALJ determined that, although Parrish suffered from Asperger syndrome and ADHD (Tr. 17), she did not have an impairment or a combination of impairments that met or equaled the "Listing of Impairments." It was also the conclusion of the ALJ that Parrish possessed the residual functional capacity ("RFC") to perform a full range of light work with the following non-exertional limitations: (1) no more than one, two, or three step instructions; (2) the work should not involve concentration on detailed/precision tasks, multitasking, reading, computing/calculating, or problem-solving; (3) minimal interaction with co-workers; and (4) two daily instructions from her supervisor regarding work tasks. (Tr. 19). The ALJ further limited Parrish to performing "routine work without production quotas mandating a specific number of pieces per hour or an up-line or down-line coworker depending on the claimant's productivity." *Id.* Finally, the ALJ also incorporated the RFC provided by Dr. Charlamb into his analysis.

Based on the testimony of a vocational expert, the ALJ found that, in spite of her limitations, Parrish was capable of performing a significant number of jobs that exist in the national economy, to wit: machine feeder, laundry worker, and housekeeping cleaner. (Tr. 22). As a result, the ALJ concluded that she was not suffering from a disability which is compensable under the Social Security Act. This decision became the final decision of the Commissioner on April 13, 2011 when the Appeals Council denied Perrish's request for a review. This lawsuit followed.

II.

The Court has the authority to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence, and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if such evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. It is important to note that the reviewing court must not "review the evidence *de novo*, make credibility determinations [or] weigh the evidence." *Brainard*, 889 F.2d at 681.

III.

In her appeal to this Court, Parrish has identified the following objections to the magistrate judge's report and recommendation; namely, the finding that (1) the ALJ's hypothetical question to the vocational expert took Parrish's significant impairments into consideration, and (2) the ALJ accounted for Asperger syndrome when formulating his residual functional capacity assessment ("RFC"). These objections will be addressed seriatim.

Parrish first contends that the ALJ's RFC assessment failed to adequately address the impairments noted by her treating physician, Dr. Charlamb. According to the RFC completed by Dr. Charlamb, Parrish was "markedly limited" in the ability to: (1) understand and remember detailed

instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday without interruption; (4) get along with coworkers; (5) maintain socially appropriate behavior; and (6) set realistic goals and make plans. (Tr. 204-05). Parrish identifies these limitations in her objection, but fails to explain how, if at all, the ALJ's RFC assessment failed to properly consider them.

Indeed, the ALJ specifically recited each of limitations listed by Dr. Charlamb and specifically noted that "[t]his opinion regarding [Parrish's] limitations has been incorporated into the residual functional capacity." (Tr. 20). Moreover, the ALJ's RFC makes it clear that he was not simply giving lip service to Dr. Charlamb's opinion. With respect to Parrish's inability to understand or remember detailed instructions, the ALJ limited the universe of jobs to those requiring less than three steps of instructions. (Tr. 19). As for Parrish's difficulty maintaining attention and concentration, the ALJ restricted her from performing detailed/precision tasks, multitasking, reading, computing/calculating, or problem-solving. The ALJ likewise accommodated Parrish's social struggles by limiting her to two daily instructions from her supervisor and by finding that she should have only minimal interaction with co-workers and brief, superficial contact with the public. (Tr. 19). Finally, the ALJ severely restricted the type of work that Parrish could perform to account for her mental impairments. More specifically, the ALJ found that Parrish should be limited to only routine work without production quotas and a specific vocational preparation rating of one or two.[3]

---

[3] Specific vocational preparation (SVP) refers to "the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job." *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 851 (6th Cir. 2010). "A rating of SVP 1 means a short demonstration is the amount of training required to learn the job, and a rating of SVP 2 means up to one month of training is required to learn the job." *Smith v. Comm'r of Soc. Sec.,* 3:13 CV 713, 2014 WL 1898523 (N.D. Ohio May 12, 2014).

In sum, Parrish has failed to persuade the Court that the ALJ's RFC failed to account for the

limitations contained in Dr. Charlamb's report.

In her final objection, Parrish argues that the magistrate judge erred in concluding that the

ALJ accounted for Asperger's syndrome when formulating his RFC. Even assuming, *arguendo*, that

Parrish did properly substantiate her argument on this score–which the Court finds she has not–the

record belies her conclusion. Indeed, the ALJ specifically noted that:

> Although the claimant has consistently been diagnosed with . . .
> Asperger's . . . the evidence does not show that [this] impairment[]
> render[s] the claimant unable to work. Despite her impairments, she
> was able to graduate high school and move out of state for college for
> one and a half years (although it must be noted that this college is
> specifically geared toward learning disabled students.). She has since
> expressed a desired to "go away" to school again. The claimant's
> resume indicated that she has worked doing data entry, and has
> volunteered at a thrift store and a food bank, and has served as a
> youth group leader at her church. (Tr. 21).

The crux of Parrish's argument appears to be that the ALJ placed too much emphasis on her ability

to attend college and obtain a job, but she fails to suggest how this relates to the objection at hand;

namely, the evaluation of Asperger's syndrome. Moreover, to the extent that Parrish is arguing that

Asperger's prevented her from succeeding at her previous job as a cashier, the ALJ specifically

accounted for this problem in the RFC by restricting her from work that required computing,

calculating, or problem solving. (Tr. 19). As such, the Court is inclined to agreed with the magistrate

judge's conclusion that the ALJ considered Asperger's syndrome in formulating Parrish's RFC.

IV.

For the reasons that have been outlined above, the Court will adopt the report of the

magistrate judge in its entirety.  In so doing, the Court will (1) grant the Commissioner's motion for

summary judgment (ECF No. 11), and (2) deny Parrish's motion for summary judgment (ECF No.

9). This Order closes the case in its entirety.


       IT IS SO ORDERED.

Date: September 22, 2014                         s/Julian Abele Cook, Jr.
                                        JULIAN ABELE COOK, JR.
                                        U.S. District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 22, 2014.


                                 s/ Kay Doaks
                                   Case Manager